# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

APRIL D. HURD,              )
                                  )
        Petitioner,       )
                                  )
    v.                     )      Case No. 4:12-CV-228-JCH-NAB
                                  )
MICHAEL J. ASTRUE,     )
                                  )
        Respondent.    )
                                  )

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying April Hurd's ("Hurd") application for disability insurance benefits[1] under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Hurd alleges disability due to major depression, learning disability, obesity, carpal tunnel syndrome, asthma, high blood pressure, back pain, leg pain sciatica[2], and right arm pain. Hurd filed a Brief in Support of Plaintiff's Complaint. [Doc. 23]. The Commissioner filed a Brief in Support of the Answer. [Doc. 30]. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 17].

---

[1] Hurd's Brief in Support of Complaint asserts that she applied for Social Security Income ("SSI") benefits. The matter currently before the undersigned is for Hurd's appeal of the denial of her application for disability insurance benefits under Title II. SSI benefits and disability insurance benefits are not the same. A claimant must make a specific application for SSI benefits and meet the eligibility requirements, which include being age 65 or older, blind, or disabled; be a resident of the U.S., meet income requirements along with other requirements. *See* 20 C.F.R. § 416.202. The eligibility requirements for disability insurance benefits are different and include the requirement that the claimant have enough social security earnings to be insured for disability. *See* 20 C.F.R. § 404.315.
[2] Sciatica is pain in the lower back and hip radiating down the back of the thigh into the leg usually due to herniated lumbar disc compromising a nerve root. Stedman's Medical Dictionary 1602 (27th ed. 2000).

## I.    Procedural Background

In January 2010, Hurd filed an application for disability insurance benefits.  (Tr. 136-148.)  The Social Security Administration ("SSA") denied Hurd's claim and she filed a timely request for a hearing before an administrative law judge ("ALJ").  (Tr. 40-45, 53-54.)  The SSA granted Hurd's request and the hearing took place on December 2, 2010.  (Tr. 19-39, 46-52.)  The ALJ issued a written decision on January 20, 2011, upholding the denial of benefits.  (Tr. 6-18.)  Hurd requested review of the ALJ's decision from the Appeals Council on February 5, 2011.  (Tr. 5.)  On December 12, 2011, the Appeals Council denied Hurd's request for review.  (Tr. 1-4.)  The decision of the ALJ thus stands as the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Hurd filed this appeal on February 9, 2012.  [Doc. 1]  The Commissioner filed an Answer on April 13, 2012.  [Doc. 12]  Hurd filed a Brief in Support of her Complaint.  [Doc. 23]  The Commissioner filed a Brief in Support of the Answer.  [Doc. 30].

Hurd, acting pro se, asserts that the ALJ's decision denying her application for benefits should be reversed, because she was found permanently and totally disabled by the State of Missouri's Medicaid program.  The Commissioner contends that the ALJ properly considered Hurd's subjective allegations and properly determined that Hurd could return to her past relevant work.

## II.    Decision of the ALJ

The ALJ found that Hurd met the insured status requirements of the Social Security Act and did not engage in substantial gainful activity during the period from her alleged onset date of September 16, 2004 through her date last insured of June 30, 2010.  He determined that she had

the following severe impairments:  depression, obesity, history of back pain, arthralgia[3], history of hyperlipidemia[4], mathematic disorder, asthma, carpal tunnel syndrome, and learning disability.  The ALJ also found however, that Hurd did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determined that Hurd had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).  Based on the RFC, the ALJ determined that Hurd could perform her past relevant work as a machine operator; therefore, she was not under a disability as defined by the Social Security Act from September 14, 2004 through June 30, 2010.

## III.    Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A.    Hearing Testimony

The ALJ held a hearing in this matter on December 2, 2010.  The ALJ heard testimony from Hurd; Hurd's husband, Terry Hurd; Hurd's mother, Rebecca Paul; Dr. John Angibogu; Dr. Nancy Tarrand; and a vocational expert, Dr. Karen Neilson.  Hurd did not have an attorney or other representative at the hearing.

#### 1.    Hurd's Testimony

Hurd provided the following testimony.  Hurd has worked at three jobs in the past fifteen years.  (Tr. 24-26.)  She worked full-time as a machine operator at Briggs and Stratton, asa housekeeper, and as a houseparent for St. James Boys and Girls Town.  (Tr. 24-25.)  She last worked in 2004.  (Tr. 24.)

---

[3] Arthralgia is pain in a joint, especially one not inflammatory in nature.  Stedman's Medical Dictionary 149 (27th ed. 2000).
[4] Hyperlipidemia is the presence of abnormally high lipids in the circulating blood.  Stedman's Medical Dictionary 851, 1019 (27th ed. 2000).

Hurd was unable to work due to mental problems and major depression. (Tr. 26.) She does not like being around people, because they make her nervous and short of breath and she cannot concentrate. (Tr. 26.) When Hurd was working, she did not have good interaction with her supervisor or other people. (Tr. 26.) Hurd's physical ailments include sciatic pain on her right side and carpel tunnel syndrome in both hands. (Tr. 27.)

At the time of the hearing in December 2010, Hurd had not seen any doctor regarding her hands, but she was seeing a mental health professional. (Tr. 27.) Hurd was taking Geodon and Lexapro. (Tr. 27.) Hurd was able to drive only to the store and back and to her parents' home. (Tr. 27, 29.) Hurd had trouble interacting with people in the store. (Tr. 27.) Hurd became nervous, started sweating, and her throat became dry when interacting with people in the store. Hurd becomes nervous if there is a lot of traffic or if someone follows her too closely. (Tr. 29.) Hurd also attends church, but does not have problems interacting there. (Tr. 28.) Hurd's husband usually drove her to doctor's appointments. (Tr. 27.)

Hurd watches mostly movies or talk shows on television. She is able to follow what is going on, if the discussion in not "real technical." (Tr. 28.)

2.    **Terry Hurd's Testimony**

Hurd's husband, Terry Hurd testified as follows. Hurd has been married to her husband for twelve years. (Tr. 30.) When she does anything, she gets frustrated, screams, and yells. *Id.* Her husband has to help her do simple things, such as providing a towel or underwear to her after taking a bath. *Id.* Hurd cannot work with numbers, which means she cannot balance the checkbook or use a calculator. *Id.* Hurd has always had problems with mathematical calculations. *Id.* Her math problems were caused by febrile convulsions when she was a child. *Id.*

Hurd is able to drive "a little bit." (Tr. 31.) Terry Hurd has to do "99 percent of the driving." *Id.* He has to go with her when she goes anywhere, because she doesn't like to be in front of people. *Id.* Terry Hurd likes to go out to watch bands and dance, but Hurd likes to sit at home. (Tr. 31-32.) Therefore, their life is basically "a lot of TV." (Tr. 32.) Terry Hurd forced Hurd to work in 2004, because they had to pay the bills. (Tr. 31.) Hurd worked on a simple machine at Briggs and Stratton, but she "really couldn't cope with it very well." *Id.*

### 3. Rebecca Paul's Testimony

Hurd's mother, Rebecca Paul testified as follows. Paul sees Hurd every day. (Tr. 32.) Hurd had seizures from a fever when she was a child. (Tr. 32.) During school, Hurd did not have any friends and was a loner. (Tr. 33.) Hurd had learning disabilities and is just not capable of working. (Tr. 33.) If Paul and her husband had not pushed and helped Hurd, she would not have graduated from high school. (Tr. 32.) Hurd cannot do math or count money. (Tr. 33.) Paul wanted Hurd to apply for disability after high school, but Hurd wanted to try to get a job so she could have her own place and stuff. (Tr. 32.)

Paul has to help Hurd around the house and Hurd has to be accompanied by Paul or Terry Hurd for any activity outside of the house. (Tr. 33.) Hurd was able to work in 2004, because she went with her husband every day and he drove. *Id.* The job caused Hurd to have carpal tunnel syndrome so bad that it keeps her awake at night. *Id.* Hurd will have to have surgery on her hands. Hurd also has sciatic nerve problems in her back besides her mental problems.

### 4.    Dr. John Angibogu's[5] Testimony

Dr. John Angibogu testified as follows.  Dr. Angibogu is a medical doctor and reviewed the exhibits in the case.  (Tr. 34.)  Hurd's medically determinable impairments are asthma, high blood pressure, low back pain, history of carpal tunnel syndrome, and obesity.  *Id.*  Hurd's body mass index is 44.3.  *Id.*  She was treated for possible polycystic ovarian disease, but there was no official diagnosis for that.  *Id.*  Hurd has a left ovarian cyst.  *Id.*  Low back pain is mentioned, but nothing objective was found.  (Tr. 34.)  Hurd does not have any impairments that meet or equal any of the Commissioner's listings.  *Id.*

### 5.    Dr. Nancy Tarrand's[6] Testimony

Dr. Tarrand testified as follows.  Dr. Tarrand is a certified psychiatrist and she reviewed the exhibits in the case.  (Tr. 35.)  Hurd suffers from learning disabilities as well as depression. (Tr. 36.)  Hurd does not have any impairments that meets or equal any of the Commissioner's listings, specifically 12.02 and 12.04.  *Id.*  Hurd is functionally limited to simple instructions.  *Id.* Her tasks at work if she were to work, should not involve any aritthmetic or working with numbers.  *Id.*  Hurd should only have incidental public contact.  *Id.*  Hurd would not work well in an intense teamwork environment.  *Id.*  She would work better in isolation from co-workers.  *Id.* Hurd would need a low stress occupation without strict production quotas.  *Id.*  She could not work with dangerous machinery, do commercial driving, or work at heights or in excessive heat such as outdoors in the sunlight.  *Id.*

---

[5] The undersigned notes that Dr. Angibogu's name is spelled as Onabogu in the hearing transcript and Angibogu in the ALJ's decision and administrative record.  The spelling in the ALJ's opinion will be used.
[6] The undersigned notes that Dr. Tarrand's name is spelled as O'Terran in the hearing transcript and Tarrand in the ALJ's decision and administrative record.  The spelling in the ALJ's opinion will be used.

## 6. Vocational Expert Dr. Karen Neilson's Testimony

Dr. Karen Neilson testified as follows. Hurd's past work as a machine operator was sedentary, unskilled work. (Tr. 37.) A hypothetical individual of Hurd's age, educational background, who is able to perform the exertional demands of light work who (1) can occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand or walk about six hours out of an eight-hour workday with normal breaks; (4) sit for six hours out of an eight hour workday with normal breaks; (5) limited to occasionally climbing ramps and stairs; (6) never climb ladders, ropes, or scaffolds; (7) occasionally balance, stoop, kneel, crouch, and crawl; (8) must avoid working around unprotected heights, open flames, dangerous moving machinery; (9) cannot perform any commercial driving; (10) must avoid concentrated exposures to dust, fumes, gases, poor ventilation, and excessive heat; (11) avoids work involving mathematical calculations on her own; (12) limited to frequent fine and gross manipulation; (13) can understand, remember, and carry out short and simple instructions; (14) can maintain attention and concentration for extended periods on simple tasks; (15) limited to work where there are no strict production quotas; (16) limited to work with only occasional decision making and occasional changes in the work setting; (17) limited to superficial contact with the general public; (18) limited to only occasional conversations and interpersonal reactions with co-workers; and (19) limited to occasional contact with supervisors could perform Hurd's past relevant work. (Tr. 37-38.) The hypothetical individual cited above could also work as an electronics worker, an office cleaner, and an assembler, which are light unskilled jobs. (Tr. 38.) There is no conflict between Dr. Nielson's testimony and the information found in the Dictionary of Occupational Titles or any of its companion publications. (Tr. 39.)

**B.    Medical Records**

The relevant medical records are as follows.  The ALJ ordered a consultative examination, which was performed by Dr. John Demorlis on March 11, 2010.  (Tr. 303-308.)  At the examination, Hurd reported that she has been depressed since the 11th grade.  (Tr. 305.)  She also reported that she heard voices telling her to kill herself, experienced crying spells, and worried a lot.  *Id.*  Hurd had not had any medication since 2004 and was not currently under professional care for her depression.  *Id.*  Hurd also complained of learning disabilities with problem solving and math, carpal tunnel syndrome, hypertension, headaches, back pain, obesity, leg pain, and a pinched nerve in her right arm.  *Id.*  Hurd claimed that she can only walk ¼ block due to back pain, stand less than ten minutes, sit for ½ hour due to back and right leg pain, ride in a car for ½ hour, and carry or lift 5 pounds due to pain in her shoulders and hands.  (Tr. 306.)  Dr. Demorlis diagnosed Hurd with depression, morbid obesity, hypertension, history of chronic back pain, arthralgias, and history of hyperlipidemia.  (Tr. 308.)  Dr. Demorlis opined that Hurd's range of motion in her shoulder, elbow, wrist, hip, ankle, cervical spine, and lumbar spine were normal.  (Tr. 303-304.)  He also found that her grip strength, upper extremity strength, and gait were also normal.  (Tr. 303.)

Disability examiner Lindsey Struemph completed a Physical RFC for Hurd on March 16, 2013.  (Tr. 309-314.)  Struemph concluded that Hurd could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for 6 hours total of an 8 hour workday, sit with normal breaks for a total of 6 hours in an 8 hour workday; and had unlimited ability to push and/or pull.  (Tr. 310.)  Struemph also opined that Hurd could frequently climb, stoop, kneel, crouch, and crawl, but never balance.  (Tr. 311.)  Struemph found that Hurd had no manipulative, visual, or communicative limitations, but must avoid

concentrated exposure to hazards, including machinery and heights. (Tr. 311-12.) Struemph reviewed the records from treating physicians and determined that the objective medical evidence did not indicate any complaints, signs, or symptoms of carpal tunnel syndrome, leg or right arm pain which would meet Social Security Administration guidelines as a severe impairment, but indicated that Hurd received the limitations indicated above due to history of back pain and morbid obesity. (Tt. 310-11.) Struemph also found that Hurd's activities of daily living indicate limitations which are inconsistent with the objective medical evidence, but it was reasonable that Hurd would have some pain and limitations given her medically determinable impairments; therefore, Hurd's allegations were given partial weight. (Tr. 313.)

On behalf of the SSA, Dr. Thomas Spencer completed a psychological examination of Hurd on March 23, 2010. (Tr. 315-319.) Dr. Spencer opined that Hurd retained the ability to understand and remember simple instructions and the ability to engage in and persist with simple tasks. (Tr. 318.) He also determined that Hurd demonstrated moderate impairment in her ability to interact socially and adapt to changes in the workplace and would likely need assistance managing her benefits. (Tr. 318.)

On April 26, 2010, Dr. Mark Altomari completed a Psychiatric Review Technique and Mental RFC Assessment regarding Hurd. (Tr. 320-334.) Dr. Altomari found that Hurd had mathematics disorder and recurrent severe major depressive disorder without psychosis. (Tr. 321, 323.) Dr. Altomari also determined that Hurd had mild restrictions in the activities of daily living and difficulties in maintaining concentration, persistence, or pace. (Tr. 328.) He found that she had moderate limitations in maintaining social functioning. (Tr. 328.) In the Mental RFC Assessment, Dr. Altomari found that Hurd was moderately limited in the ability (1) to understand and remember detailed instructions; (2) to carry out detailed instructions; (3) interact

appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (7) to respond appropriately to changes in the work setting. (Tr. 332-33.)

## IV.    Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. § 404.1520.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. § 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ."  *Id.*  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. § 404.1520(d); Part 404, Subpart P, Appendix 1.  If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[7] 20 C.F.R. § 404.1520(e). At this step, the burden rests with the claimant to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(f)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.* If the claimant can adjust to other work, the claimant will be found not disabled. *Id.* At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

---

[7] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); s*ee also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V. Discussion

### A. Disability Determination by Missouri Department of Social Services

Hurd's reason for seeking reversal is that she was granted Medicaid coverage by Missouri HealthNet, a division of Missouri's Department of Social Services ("DSS"), which Hurd claims found her permanently and totally disabled. She contends based upon the DSS determination the ALJ should have also found that Hurd was disabled under the social security law. Hurd's contention is not correct under the law. Social Security decisions regarding the award of disability insurance benefits are based on social security law; therefore a determination made by another agency that a claimant is disabled is not binding on the Commissioner. 20 C.F.R. § 404.1504. "[T]he Eighth Circuit has held, [however], that a disability finding by another agency deserves some weight and in some cases is important enough to deserve explicit attention." *Kennedy v. Astrue*, No. 4:07-CV-1727 CDP, 2009 WL 277791 at *10 (E.D. Mo. Feb. 5, 2009) (citing *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998)).

In this case, Hurd asserts that she was granted Medicaid six months prior to the date of her hearing before the ALJ, which occurred in December 2010. [Doc. 23, p. 1]. The undersigned has thoroughly reviewed the Administrative Record before the ALJ in this matter. There was no evidence in the record before the ALJ that DSS had issued a determination that Hurd was permanently and totally disabled. To the contrary, there was evidence in the record from DSS that Hurd had been denied Medicaid coverage. (Tr. 100-01, 191). Hurd also stated in her initial disability application that she could not go to the doctor, because she did not have any insurance." (Tr. 172, 189.)

Hurd submitted additional evidence to the Appeals Council, but the DSS determination of disability is not included in that submission either. The Court found the following notations regarding Hurd receiving Medicaid in the submission to the Appeals Council dated June 23, 2011:

    (1) Insurance Provider Medicaid MO (Tr. 367, hospital document dated 6/12/2011)

    (2) "Reports now approved for Medicaid" (Tr. 394, medical record dated 11/23/2010)

    (3) "She is happy that she got her Medicaid and has better access to medications." (Tr. 476, 630- Progress note by Dr. Bhaskar Gowda dated 11/22/2010)

    (4) Insurance Company Medicaid (Tr. 500- hospital document dated 6/16/11)

    (5) Insurance Provider is Medicaid (Tr. 653- hospital document dated 6/12/2011).

The disability finding by DSS is a piece of evidence that the ALJ should consider, but in this case, the Commissioner cannot consider evidence that it does not have. *See Kennedy* at *11. Hurd did not inform the Commissioner that she had been found permanently and totally disabled or provide any supporting documentation of any disability finding by DSS before the ALJ or the Appeals Council. There is no evidence in the administrative record that DSS has determined that Hurd is permanently and totally disabled. Therefore, there was no error on the part of the Commissioner in the failure to consider any disability determination by DSS.

**B.    Substantial Evidence on the Record as a Whole**

The undersigned will now consider whether the ALJ's decision was based on substantial evidence on the record as a whole. To determine whether the Commissioner's final decision is

supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the ` claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

### 1.      Non-Medical Evidence

First, the undersigned will review the ALJ's determination of the non-medical evidence, including Hurd's credibility, background, subjective complaints and third party evidence. While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully

support them.  Polaski 739 F.2d at 1322.  The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints.  *Id.*  The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

*Id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints.  *Guillams*, 393 F.3d at 802; *Masterson*, 363 F.3d at 738.  "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence."  *Id.* (citing *Butler v. Sec'y of Health & Human Servs.*, 850 F.2d 425, 429 (8th Cir. 1988)).  The ALJ, however, "need not explicitly discuss each *Polaski* factor."  *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004); *see also Steed*, 524 F.3d at 876 (citing *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  *Id.*  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988); *Millbrook v. Heckler*, 780 F.2d 1371, 1374 (8th Cir. 1985).

The ALJ only found Hurd partially credible. The ALJ found that while Hurd's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Hurd's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible where they differed from the RFC. (Tr. 16.) Specifically, the RFC accounted for Hurd's learning disabilities regarding math, moderate social difficulties, including interacting with co-workers and supervisors, concentration and memory problems, and depression. (Tr. 15, 26, 140). The ALJ discounted Hurd's credibility regarding the severity of her alleged carpal tunnel syndrome, because as of the time of the hearing in December 2010, Hurd had not sought any treatment for it. (Tr. 16, 27.) The ALJ also discounted the severity of Hurd's nervousness and lack of concentration being around others as Hurd stated she was able to purchase items while shopping despite being nervous when interacting with people in the store and denied that she had any problems interacting with people at church. (Tr. 16, 28.) The ALJ noted that Hurd was able to communicate with the ALJ during the administrative hearing. (Tr. 14.) The ALJ also noted that Hurd had not received any treatment from a mental health care professional until September 2010, after her date last insured. (Tr. 16, 28.) The ALJ also noted that Hurd received psychotropic medication. (Tr. 27.) The ALJ found that Hurd's reported activities of driving for short distances, shopping at stores, attending church for an hour every week, watching television, and visiting with her parents were not consistent with her claim of total disability. (Tr. 16.)

The ALJ properly credited many of Hurd's subjective complaints and allegations that were supported by medical evidence in the record as a whole. The ALJ's decision that Hurd's daily activities demonstrated that she was not totally disabled is supported by substantial evidence in the record as a whole. *See Eichelberger*, 390 F.3d at 590 (daily activities of watching television, reading, driving and attending church were properly considered in

concluding that subjective complaints were not credible). "Although it is true that [Hurd's] daily activities demonstrate some limitations, the ALJ was not obligated to accept all of [her] assertions concerning those limitations." *Ostronski v. Chater*, 94 F.3d 413, 418-419 (8th Cir. 1996). The ALJ's RFC incorporates Hurd's alleged limitations that are supported in the record as a whole, including limitations regarding the need for moderately limited social interaction and limitation to simple tasks in a low stress environment. The undersigned also finds that the ALJ properly considered the lay witness testimony of Hurd's husband and mother. The lay witness testimony presented in support of Hurd's application corroborated Hurd's testimony regarding her daily activities. The ALJ could discount those opinions to the same extent that Hurd's testimony was discounted. *See Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) (most of lay witness's testimony was discredited by the same evidence that discredited claimant's own testimony concerning his restrictions). After a careful review of the record as a whole, the undersigned finds that it supports the ALJ's credibility determination.

### 2. Medical Evidence

#### a. Evidence to be Considered on Review

First, the undersigned must address the contents of the medical evidence in the record. The ALJ's decision relied on the medical evidence produced by the consulting and examining physicians for the SSA; prior diagnoses of learning disability, depression, hypertension, and hyperlipidemia; and Hurd's educational records. The undersigned notes that the administrative record before the ALJ contained limited information regarding Hurd's allegations in her application. Most of the information submitted by Hurd prior to the date last insured consisted of medical information not relevant to her application for disability insurance benefits. For example, Hurd mostly submitted evidence regarding irregular menstrual cycles and laboratory

test results for pap smears. (Tr. 201-207, 212-214, 223-236, 238-239, 241, 338). Relevant medical records from 2006 documented problems with hypertension and depression that were controlled medically. (237, 240.) Hurd also submitted her education records from elementary and secondary school documenting her learning disability. (Tr. 339-362.)

Prior to the administrative hearing and the ALJ's decision, but after her date last insured, Hurd submitted two letters from Dr. Bhaskar Gowda, a psychiatrist at Pathways CBH, Inc. (Tr. 363-364.) The first letter dated September 23, 2010 stated substantively the following: "April Hurd is under my care at Pathways CBH, Inc. since 9/20/2010. She has been diagnosed with Psychotic Disorder NOS [and] Major Depression with Psychotic Features. She needs to see a psychiatrist on [sic] regular basis and take medication; however she cannot afford her medications." (Tr. 363). In the second letter, dated October 8, 2010, Dr. Gowda stated that Hurd was diagnosed with major depressive disorder, psychotic disorder NOS, and panic disorder with agoraphobia. (Tr. 364.) Dr. Gowda assessed Hurd's GAF at 50. *Id.* He also reported that Hurd "had difficulty handling conflict and stress whether in the store, around others, and in the workplace as her symptoms become unstable." (Tr. 364.) He also noted that she was struggling to control her anxiety and accompanying hallucinations. *Id.* Dr. Gowda stated that Hurd's depression kept her unmotivated to tend to daily tasks and that she needed to see a psychiatrist on a regular basis for medication adjustments, but she was unable to afford her medications and office visit costs. *Id.* A claimant seeking disability insurance benefits must establish she was disabled before the expiration of her insured status. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). While evidence from outside the insured period can be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded," it cannot serve as the only support for the disability claim. *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir.1998). The

ALJ mentioned the letters from Dr. Gowda, but limited her decision to the medical evidence through the date last insured of June 30, 2010. (Tr. 9, 16.)

Hurd submitted additional evidence to the Appeals Council after the ALJ's decision. The Appeals Council can consider the additional evidence only where it relates to the period on or before the date of the ALJ hearing decision. *Perks*, 687 F.3d at 1093 (citing 20 C.F.R. § 404.970(b)). In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622). Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012)(citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)).

Most of the additional evidence submitted to the Appeals Council includes evidence not relevant to the time period before the ALJ's decision.[8] There is also evidence that was dated prior to the ALJ's decision from October and November 2010 (Tr. 387-401, 460-477, 625-631), and January 12, 2011 (Tr. 456-459). The Appeals Council stated that the additional evidence was made part of the record and found it did not provide a basis for changing the ALJ's decision. (Tr. 1.) Therefore, the undersigned will review whether the record as a whole supports the

---

[8] The evidence presented to the Appeals Council outside of the date last insured and after the ALJ's decision on January 20, 2011, are located in the administrative record at pages 365-384, 402-455, 478-497, 500-624, 632-683. The undersigned notes that some of these documents are duplicates.

decision made by the ALJ, including the evidence submitted to the Appeals Council relevant to the time period before the ALJ's decision.

### b. Residual Functional Capacity

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

The undersigned has reviewed the medical evidence[9] in this case and finds that based upon the medical opinion evidence along with the other evidence in the record the ALJ's RFC was supported by substantial evidence in the record as a whole. The ALJ's RFC was consistent with the medical evidence in the record, including the additional evidence submitted by Hurd. The RFC incorporated the medical opinion evidence that Hurd suffered from learning disabilities (Tr. 35, 321, 323), was functionally limited to simple instructions (Tr. 36, 332-333), was limited in social interactions and with co-workers and supervisors (Tr. 36, 328, 332-333), and needed a low stress occupation without strict production quotas. (Tr. 15.)

### 3.    Past Relevant Work and Adjustment to other Work

Finally, the undersigned reviews the ALJ's decision at steps four and five of the sequential evaluation process that Hurd was able to perform her past relevant work or alternatively make an adjustment to other work.

### a.    Past Relevant Work

First, the undersigned notes that the ALJ found that Hurd could return to her past relevant work as it was actually and generally performed, because the work "did not require the performance of work related activities precluded by the claimant's residual functional capacity." (Tr. 16-17.) A claimant who can perform his or her past relevant work, as he or she actually performed it, is not disabled at step four even though the claimant would be unable to perform

---

[9] Hurd also produced additional evidence to the district court attached to her Brief in Support of Complaint. "Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings." *Jetton v. Astrue*, No. 4:06-CV-910 CAS DDN, at *4 (E.D. Mo. Aug. 7, 2007) (citing *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir.1997)). "Remand for consideration of new evidence is only appropriate when plaintiff shows that the new evidence ... is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* "To be considered material, the new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Jones*, 122 F.3d at 1154. The evidence submitted to the district court consisted of three letters from Dr. Gowda (including two letters already in the record), Hurd's educational records, and a copy of a Missouri Medicaid manual. The undersigned finds that the evidence submitted with the Brief in Support of Complaint [Doc. 23] was cumulative of evidence already in the record and need not be considered by the court.

that work as it is generally performed in the national economy. *See Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)); *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled.") (citing *Jones*, 86 F.3d at 826; 20 C.F.R. § 404.1520(e)).

The Eighth Circuit has consistently held that SSR 82–62 requires an ALJ to "fully investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that [the claimant] is able to perform her past relevant work." *Groeper v. Sullivan,* 932 F.2d 1234, 1238 (8th Cir.1991) (emphasis added in original) (quoting *Nimick v. Sec. of Health and Human Servs.,* 887 F.2d 864, 866 (8th Cir.1989)); *see also Kirby v. Sullivan,* 923 F.2d 1323, 1326 (8th Cir.1991). The *Groeper* court cautioned that an ALJ's failure to fulfill this obligation *requires* reversal. *Groeper,* 932 F.2d at 1238 (emphasis added) (citing *Kirby,* 923 F.2d at 1327).

The *Groeper* court fully explained the analysis that the ALJ must perform in evaluating whether a claimant can perform past relevant work. The court explained:

> An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity. The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks. *See Kirby v. Sullivan,* 923 F.2d 1323, 1326–27 (8th Cir.1991). A conclusory determination that the

> claimant can perform past work, without these findings, does
> not constitute substantial evidence that the claimant is able to
> return to his past work. *Id.* at 1327.

*Groeper,* 932 F.2d at 1238–39. In *Groeper,* the ALJ found that the claimant "was able to perform simple repetitive tasks that have only minimal memory requirements," and without setting forth the physical and mental demands of the claimant's past work, the ALJ concluded that the claimant maintained the capacity to perform his past work as a bus boy and baker's helper. *Groeper,* 932 F.2d at 1239. Although the record contained evidence regarding the physical demands of the claimant's past work, the ALJ did not mention any specific physical demand of the claimant's past work. *Id.* Further, the court noted that the record lacked any evidence regarding the mental demands of claimant's past work. *Id.* The court therefore found that "[t]he ALJ failed to fully investigate and make findings regarding either the demands of [the claimant's] past work or [the claimant's] capabilities[ ][and][t]hus, he did not properly evaluate [the claimant's] ability to perform past work." *Id.*

The ALJ may refer to the job descriptions in the *Dictionary of Occupational Titles,* for a definition of Hurd's job as it is performed in the national economy. *Sells v. Shalala*, 48 F.3d 1044, 1047 (8th Cir. 1995). In this case, the ALJ failed to even identify the requirements of Hurd's past relevant work in the decision or demonstrate how the RFC was consistent with the physical and mental demands of her past relevant work. The ALJ made a conclusory statement that "[c]omparing Hurd's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as it was generally performed." The VE testified that the only "relative" work performed by Hurd was as a machine operator, which was unskilled sedentary work. (Tr. 37.) Neither the VE or the ALJ referenced the DOT regarding Hurd's past relevant work; therefore, the ALJ's decision could not have

relied upon the DOT in determining that Hurd could perform her past relevant work.  Upon the undersigned's review of the record, Hurd testified that during her job as a machine operator, she "worked on a machine line," "picked up parts, crank shafts and put them in a machine and they cut holes in the crank shafts," and "then put them back on the line."  (Tr. 25.)  Hurd's Work History Report stated that during each work day she spent 1 hour walking and sitting; six hours standing; 7 hours handling; grabbing, or grasping big objects, and half an hour crouching, and reaching.  (Tr. 152.)  Hurd also stated that she stood in one place doing repetitive work.  *Id.*  This evidence is not substantial evidence that Hurd could return to her past relevant work, because there is no evidence in the record that Hurd's past relevant work accounted for the RFC limitations regarding no strict production quotas and limited contact with supervisors or co-workers.  Therefore, the ALJ's conclusory analysis failed to include the details necessary to determine the physical and mental demands of Hurd's past relevant work, therefore, the undersigned recommends that this case be reversed and remanded for consideration consistent with this opinion.

### b.    Alternative Finding of Adjustment to Other Work

The ALJ made an alternative finding that Hurd could make an adjustment to other work. If the disability claimant cannot perform her past relevant work, the burden of proof shifts to the Commissioner to prove that the claimant retains the RFC to do other kinds of work and that other work exists in substantial numbers in the national economy that the claimant is able to perform. *Goff*, 421 F.3d at 790.

In this matter, the ALJ posed a hypothetical to the VE that incorporated all of Hurd's impairments and the limitations imposed by those impairments.  (Tr. 37-38.)   An ALJ's hypothetical question must fully describe a claimant's impairments.  *Chamberlain v. Shalala*, 47

F.3d 1489, 1495 (8th Cir. 1995). These impairments must be based on the "substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010). If the hypothetical question is properly formulated, then the testimony of the VE constitutes substantial evidence. *Roe v. Chater*, 93 F.3d 672, 676 (8th Cir. 1996).

The VE testified that based on the RFC, Hurd could perform light, unskilled jobs such as electronics worker (DICOT 726.687.010), Office Cleaner (DICOT 323.687.014), and assembler (DICOT 690.685-014). The VE also testified that there was no conflict between her testimony and the information in the DOT or its companion publications. The undersigned notes that the DOT definitions for electronics work, office cleaner, and assembler as cited above require Math Level 1, which has the expectation that the employee would be able to add and subtract two-digit numbers; multiply and divide 10's and 100's by 2, 3, 4, and 5; perform basic arithmetic operations with coins as part of a dollar; and perform operations with units such as cup, pint, and quart, inch, foot, yard, ounce and pound. *See* (DICOT 726.687.010-electronics worker), (DICOT 323.687.014- office cleaner), and (DICOT 690.685-014- assembler). Hurd's RFC stipulates that she avoid work that requires mathematical calculations. (Tr. 15.) The DOT definitions for electronics worker and assembly operator require a Reasoning Level 2, which means the employee can "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *See* (DICOT 726.687.010-electronics worker), (DICOT 690.685-014-assembler). Hurd's RFC provides that she can understand, remember, and carry out short and simple instructions. (Tr. 15.)

"The Dictionary of Occupational Title definitions are simply generic job descriptions that offer the appropriate maximum requirements for each position, rather than their range. Not all of the jobs in every category have requirements identical to or as rigorous as those listed in the [DOT]." *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Id.* In this case, the VE's testimony that Hurd could perform those jobs conflicts with the DOT. "[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the [*DOT*] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)). The ALJ's decision acknowledges that Hurd's ability to perform all or substantially all of the requirements of the full range of light work was impeded by additional limitations. The ALJ did not inquire of the VE, however, regarding how the additional limitations reflected in the RFC would affect the number of jobs available to Hurd in the national economy. If the VE had specifically limited her opinion to reflect Hurd's inability to perform math or limitation to simple instructions, then her testimony would have been acceptable. *See Jones*, 619 F.3d at 978 (because vocational expert specifically limited opinion to reflect sedentary work requiring only occasional handling, testimony was perfectly acceptable basis for ALJ's conclusions). Because it is unclear whether the VE's testimony accounted for Hurd's additional limitations, the undersigned recommends that this case be reversed and remanded for further clarification and findings on this matter.

**VI.     Conclusion**

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole supports the Commissioner's RFC assessment, however there is not substantial

evidence on the record as a whole to support the Commissioner's determination that Hurd could perform her past relevant work or make an adjustment to other work. Therefore, the undersigned recommends that this action be reversed and remanded for a reevaluation and clarification regarding Hurd's ability to perform past relevant work and ability to adjust to other work consistent with this report and recommendation.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint be **GRANTED** in part, and **DENIED,** in part. [Doc. 1]; [Doc. 23].

**IT IS FURTHER RECOMMENDED** that a Judgment of Reversal and Remand be issued pursuant to 42 U.S.C. § 405(g), sentence 4 remanding this case to the Commissioner of Social Security for further consideration consistent with this report and recommendation.

**IT IS FURTHER RECOMMENDED** that the Court order the ALJ, on remand, to reassess whether Hurd can return to her past relevant work or make an adjustment to other work in a manner consistent with this report and recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 6th day of March, 2013.

   /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE